FILED'11 MAY 27 12:15USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JOHN PATRICK BEGIN,

          Petitioner,      Civil No. 10-598-CL

        v.            REPORT AND
                       RECOMMENDATION

PAULA MEYERS,

          Respondent.

CLARKE, Magistrate Judge.

     Petitioner is in the custody of the Oregon Department of Corrections pursuant to a Judgment dated September 11, 2006 from the Marion County Circuit Court after a conviction for Assault in the Second Degree. After the jury found petitioner guilty of Assault in the Second Degree and not guilty of Stangulation and Interference with Making a Report, Exhibit 131, the court sentenced petitioner to 70 months imprisonment. Exhibit 101.

     Petitioner directly appealed his conviction, but the

1 - REPORT AND RECOMMENDATION

Court of Appeals dismissed the appeal as premature. Exhibit 107 - 108. Petitioner filed a second appeal, but subsequently moved for voluntary dismissal which the court allowed. Exhibit 109 - 111. Petitioner did not seek review by the Oregon Supreme Court.

Petitioner filed a Formal Petition for Post-Conviction Relief, Exhibit 112, but the Umatilla County Circuit Court denied relief. Exhibit 136. The Oregon Court of Appeals affirmed Exhibit 137 and the Oregon Supreme Court denied review. Exhibits 141 - 142.

Petitioner filed a petition for habeas corpus relief under 28 U.S.C. sec. 2254 alleging that his trial counsel did not have spatters of blood found on the assault weapon tested until after petitioner's trial was over.

Respondent moves to deny relief on the ground that "petitioner's claim was denied in a decision that was not 'contrary to,' nor an 'unreasonable application of,' United States Supreme Court precedent," and because the claim lacks merit. Response (#9), p. 2.

The relevant facts are as follows: On December 31, 2005, petitioner was involved in an altercation with Melissa Brillon at the Best Value Inn in Salem, Oregon. The person that called the police stated that a female with a "bloody lip" "reported being physically assaulted by her ex-boyfriend." Exhibit 121, p. 4. The responding officer found Ms. Brillon holding a towel "saturated with blood" to her mouth. Id.

2 - REPORT AND RECOMMENDATION

At petitioner's trial, Ms. Brillon testified that petitioner struck her 4 or 5 times with a wooden coat hanger, which she blocked with her arm so they would not hit her in the face. Exhibit 104, p. 47 - 50. Brillon further testified that her lip was cut when petitioner pushed her down and held his hand over her face. Id. at p. 50.

Petitioner testified that Brillon hit him in the arms with a hanger, then grabbed another hanger and hit him in the boot - at which point the hanger broke and a piece of it hit Brillon in the mouth. Exhibit 104, p. 103.

Four broken wooden coat hangers with "small amounts of blood on two separate hangers" were recovered from the scene and seized as evidence. Exhibit 121 at p. 4. Petitioner told his trial counsel that he cut his finger on the night of the incident and that the blood on the hangers was probably his. Exhibit 123 at p. 11; see also, Exhibit 124 at p. 2. Petitioner wanted the blood on the hanger tested to determine its source but counsel thought such a test was unnecessary because they "did not have any evidence to suggest that the blood did not belong to the victim" and that petitioner had told the arresting officer that he did not think he was injured." Exhibit 124 at p. 2. Furthermore, counsel felt that "blood on hangers was consistent with (his) theory of the case which was that Ms. Brillon was hitting Mr. Begin with the hangers and one broke and hit her in the mouth causing the injury which bled all over the room." Id.

3 - REPORT AND RECOMMENDATION

However, because petitioner wanted the blood tested, counsel told petitioner that he would arrange for the test if petitioner could pay for it. Exhibit 124 at p. 2. Petitioner told counsel he could not pay for the test at that time, but that he would pay for it when he received funds he was expecting. Id.

After trial, petitioner's counsel obtained state funding to have the blood tested. Exhibit 124 at p. 3-4. The testing did not prove that the blood was petitioner's; rather it established that the blood came from a male and that petitioner could not "be excluded as the contributor." Exhibit 129, at p. 4-5.

Based on that evidence, trial counsel filed a motion for a new trial. Id. The trial court denied the motion stating: "I just don't think it would change the results so I am going to deny the motion for a new trial." Exhibit 106 at p. 9.

Petitioner claims that his attorney "failed to get a DNA test done" on the blood found on the wooden coat hangers, and failed to request discovery from the state which would have alerted the defense to the fact that DNA testing had not been done. Petition (#1) p. 6. Petitioner argues that "the wooden coat hanger was a very crucial piece of evidence" in his case. "My charge was Assault II because the DA's office claimed the wooden coat hanger was a deadly weapon. If the jury would have known it was not her blood, I believe, that the jury would have found me not guilty." Id.

Petitioner's claim in this proceeding is similar to the
ineffective assistance of counsel claim(s) petitioner alleged
in his PCR petition. See, Exhibit 112 at p. 3, and arguably on
appeal.[1]  In denying relief, the PCR trial court found:

A.   At the time of trial, petitioner had told his
attorney that blood on hanger [was] his.   Only
after trial did he state that all [the] blood in
[the] room was his.

B.   DA theory of Assault II was based on marks left
on [victim's] arms, not injuries to face that bled.
Therefore decision not to test blood was reasonable
one.

C.   In denying petition for new trial, trial judge
found that blood results wouldn't have changed
result.

D.   Trial judge offered a reset of the trial for
additional preparation and petitioner declined the
reset after hearing that the blood had not been
tested.   He therefore waived the issue that the
case wasn't ready for trial.

E.   Based on the trial court's finding but also
this court's reading of the evidence that counsel's
performance met all constitutional standards.

---

[1]In his PCR appeal, petitioner framed the assignment of error
as follows: "Did the post-conviction court err by concluding that
it was reasonable for petitioner's trial attorney to not determine
whose blood (petitioner's or the alleged victim's) was on the
hanger that petitioner allegedly used as a weapon against the
alleged victim?"   Exhibit 137, Appellant's Brief, p. 3.   In the
Petition for Review to the Oregon Supreme Court petitioner alleged:
When a criminal case is a credibility contest between the
complaintant and the defendant, is it reasonable for counsel to
forego a simple investigative inquiry that would corroborate the
defendant's version of events and refute the complaintant's
version?" Exhibit 140, Petition for Review, p. 1. Petitioner did
not directly raise the issue of failure to test the blood as an
ineffective assistance of counsel claim but rather couched his
argument in terms of selection of trial strategy and "waiver" of
his right to effective counsel.   Respondent does not argue that
petitioner failed to exhaust state remedies as to his claim in this
proceeding, however, I find that it is arguable that he did not.

Exhibit 136, PCR Trial Court Judgment p. 1-2.

Under the Antiterrorism and Effective Death Penalty Act of 1966 (AEDPA), habeas corpus relief may "not be granted with respect to any claim that was adjudicated on the merits in state court proceedings," unless the adjudication:

1.) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained that in passing the AEDPA, Congress intended to change the habeas corpus field by curbing delays, preventing "re-trials" on federal habeas, and giving effect to state convictions to the extent permissible under the law. Williams v. Taylor, 529 U.S. 362, 404 (2000). In addressing the deference requirements set forth in 28 U.S.C. § 2244(d)(1), the Court specifically found that the "contrary to" and "unreasonable application" clauses of the AEDPA have independent meanings. Id.

In Lockyer v. Andrade, 538 U.S. 63 (2003) the
6 - REPORT AND RECOMMENDATION

Supreme Court held that "a state court decision is 'contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially distinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" Andrade, 538 U.S. at 73. (citations omitted).

The Court further held that "under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of the clearly established law must be objectively unreasonable." Andrade, 538 U.S. at 75.

The Andrade court further clarified that under 28 U.S.C. § 2254(d) a state court's decision is not necessarily "objectively unreasonable" even if it is "clear error." "It is not enough that a federal habeas court, in its independent review of the legal question' is left with a 'firm conviction' that the state court was erroneous. We have held precisely the opposite: Under

7 - REPORT AND RECOMMENDATION

§ 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must be objectively unreasonable." Andrade, 538 U.S. at 75-76.

It is not an "objectively unreasonable application of clearly established federal law" for a state court to decline to apply a specific legal rule that has not been squarely established by the Supreme Court. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

Even incorrect state-court decisions must be given deference, unless they are "contrary to" or "objectively unreasonable" applications of a Supreme Court holding. This is true even if the state courts do not fully articulate their reasoning. Delgado v. Lewis, 223 F.3d 976. 982 (9th Cir. 2000) ["federal court review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of the controlling federal law."].

Finally, under 28 U.S.C. § 2254(d)(2), "[f]actual determinations by a state court are presumed to be correct absent clear and convincing evidence to the

contrary." <u>Miller -el v. Cockrell</u>, 537 U.S. 322, 340 (2003). The AEDPA thus sets out a "highly deferential standard for evaluating state court rulings," which requires that state court decisions be given the benefit of the doubt. <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2003) (per curiam), quoting <u>Lindh v. Murphey</u>, 521 U.S. 320, 333 n. 7 (1997). This is true even if the state court did not fully articulate their reasoning. <u>Delgado v. Lewis</u>, 223 F. 3rd 976, 982 (9th Cir. 2000) ("federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of the controlling federal law.").

"[I]t is past question that the rule set forth in <u>Strickland</u>, qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Williams v Taylor</u>, <u>supra</u> at 391. Under <u>Williams</u>, a petitioner may therefore be granted habeas corpus relief on a claim of ineffective assistance of counsel only if the decision of the state court was contrary to, or an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Under <u>Strickland</u>, a claim that counsel's assistance was so ineffective as to require reversal of a conviction has two components. First, the petitioner must show that

counsel's performance was deficient; second, the petitioner must show that the deficient performance prejudiced the defense. Id. at 687.

The first prong of the Strickland test required the petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness. Strickland, supra at 688. The second component of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome." Id.

In Bell v. Cone, 535 U.S. 685 (2002), the Court reiterated that when considering ineffective assistance of counsel claims:

[J]udicial scrutiny of a counsel's performance must be highly deferential and that every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Thus, even when a court is presented with an ineffective-assistance claim not subject to §2254(d)(1) deference, a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Bell, 535 U.S. at 695 (citations and quotations marks omitted).

When considering ineffective assistance of counsel

claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam), see also, Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009) (citing Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).

Trial counsel defended the case by arguing that Brillion's injuries occurred when the hanger broke while she was striking petitioner, resulting in her blood on the hanger. This theory was plausible, did not conflict with the physical evidence, and was consistent with petitioner's statement to the police.

Petitioner now argues that counsel should have made a different tactical decision and argued that the blood on the hanger was his. However, challenges to tactical decisions are not a proper basis for habeas corpus relief. See, Strickland, 446 U.S. at 690-691 ("Strategic choices made after through investigation of law and facts relevant to plausible options are virtually unchallengible.")

The tactical decision or strategy now advocated by petitioner would have rendered petitioner's statements to police that he was not injured inconsistent with the physical evidence in the case, (ie. His blood on the

11 - REPORT AND RECOMMENDATION

hanger). In addition, advancing a defense theory that petitioner suffered a bleeding injury at the hands of Brillion would also be inconsistent with petitioner's statement to his family that he and Brillion had "no contact" that night. Respondent's Exhibit 104 at p. 94, 112.

Counsel's decision to explain the blood on the hangers as he did was consistent with the other evidence presented at trial and was reasonable defense strategy under the circumstances.

Even if petitioner could establish that trial counsel was deficient, he has failed to establish any prejudice. Both the trial court and the PCR court found that the blood test results would not have changed the result of the trial. These findings are reasonable and entitled to deference for several reasons.

First, the test did not prove that the blood on the hangers was petitioner's. The post-trial testing of the blood produced a partial DNA profile that was only able to establish that the blood was from a male and that petitioner could not be excluded as the contributor of the DNA saple. Respondent's Exhibit 129 at 4-5.

Second, proof that the blood was petitioner's would have weakened petitioner's credibility by creating an

12 - REPORT AND RECOMMENDATION

inconsistency with petitioner's statements to police and his family.

Finally, petitioner's blood on the hangers does not necessarily tend to establish that petitioner was attacked by Brillion or that petitioner was not guilty of assaulting Brillion. Petitioner blood could have been on the hangers because he cut himself while handling them. Such evidence could be used to establish petitioner's guilt by tending to show that petitioner was gripping the hangers when they broke.

Finally, as the PCR court found, petitioner's decision not to request a continuance "waived" his right to argue that he wasn't ready for trial. Respondent's Exhibit 136 at 2. The court afforded petitioner the opportunity to set over the trial in order to have the hangers tested, which he declined. Petitioner cannot now argue that counsel's decision not to test the hangers was deficient when he declined to pursue testing when given the opportunity.

Based on the foregoing I find that the PCR court's finding that counsel was not deficient was not an unreasonable application of *Strickland* and is entitled to deference by this court. In addition, I find that the PCR decision is supported by the record and correct on

13 - REPORT AND RECOMMENDATION

the merits.  Petitioner's Petition (#1) should be denied.
This proceeding should be dismissed.

This   recommendation   is   not   an   order   that   is
immediately appealable to the Ninth Circuit Court of
Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),
Federal Rules of Appellate Procedure, should not be filed
until   entry   of   the   district   court's   judgment   or
appealable order.  The parties shall have fourteen (14)
days  from  the  date  of  service  of  a  copy  of  this
recommendation  within  which  to  file  specific  written
objections with the court. Thereafter, the parties have
fourteen (14) days within which to file a response to the
objections.   Failure to timely file objections to any
factual determinations of the Magistrate Judge will be
considered  a  waiver  of  a  party's  right  to  de  novo
consideration of the factual issues and will constitute
a waiver of a party's right to appellate review of the
findings of fact in an order or
judgment  entered  pursuant  to  the  Magistrate  Judge's
recommendation.

/////

/////

/////

/////

14 - REPORT AND RECOMMENDATION

## *Certificate of Appealability*

*Should petitioner appeal, a certificate of appealability should be denied as petitioner has not made a substantial showing of the denial of a constitutional right. See, 28 U.S.C. § 2253(c)(2).*

DATED this 26 day of May, 2011.

Mark D. Clarke
United States Magistrate Judge

15 - REPORT AND RECOMMENDATION